NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHERYL L. PICKETT,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No.: 18-13627<br><br>OPINION |

**CECCHI, District Judge.**

## I. INTRODUCTION

Before the Court is Plaintiff Cheryl L. Pickett's appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income under the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

## II. BACKGROUND

### A. Procedural History

Plaintiff applied for supplemental security income on June 27, 2014, alleging disability as of December 27, 2013. (Tr.[1] at 15). The application was denied initially on September 25, 2014. (*Id.*). On May 24, 2017, a hearing was held before an ALJ. (*Id.* at 32-68). The ALJ issued a decision on September 1, 2017 finding that, despite having severe impairments, Plaintiff was able

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 8).

1

to perform jobs that existed in significant numbers in the national economy and was therefore not disabled as defined by the SSA. (*Id.* at 12-31). Plaintiff requested review of the decision and the Appeals Council subsequently denied the request. (*Id.* at 1-6). On September 6, 2018, Plaintiff instituted this action. (ECF No. 1).

### B. Factual Background

At the time of her administrative hearing, Plaintiff was fifty-two years old. (Tr. at 36). Plaintiff completed specialized training in computer operations in 1990, after which she began work as a data entry clerk. (*Id.* at 216). Plaintiff left this position in 2005 in order to care for her mother. (*Id.* at 260). Plaintiff has not worked since 2005. (*Id.* at 215).

Plaintiff suffers from osteoarthritis, diabetes, and degenerative disc disease. (*Id*. at 86, 505, 508). Plaintiff claims her orthopedic ailments stem from a December 2013 car accident. (*Id.* at 36). Plaintiff is generally able to clean, do laundry, and iron. (*Id.* at 225). She can also grocery shop on her own, although she may require assistance when buying heavier items. (*Id*. at 48). At her hearing, Plaintiff testified that it is hard for her to sit in air-conditioned environments due to her arthritis, and she has trouble typing due to her arthritis. (*Id.* at 40, 42).

### III. LEGAL STANDARD

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). *See also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir.

1978) (citations omitted). Substantial evidence is more than a mere scintilla and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B. Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on

evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).

The SSA follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the plaintiff has an impairment that limits her ability to work. *Id*. Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id*. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point that the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, with the burden shifting to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id*. at 263 n.2.

**IV.     DISCUSSION**

Plaintiff argues that the ALJ erred in (1) failing to make sufficient findings about the requirements and nature of Plaintiff's past relevant work, and (2) failing to sufficiently establish that Plaintiff's past relevant work conferred transferrable skills. (ECF No. 13 ("Pl. Br.") at 8-15). Plaintiff alleges that these errors prevent meaningful review of the ALJ's finding that Plaintiff had acquired transferable work skills. (*Id*.). The Court finds that the ALJ properly (1) evaluated the

4

requirements and nature of Plaintiff's past relevant work, and (2) concluded that Plaintiff's past relevant work conferred transferrable skills. Therefore, the ALJ's judgement is affirmed.

### A. Summary of the ALJ's Findings

At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA and had not engaged in substantial gainful work activity since the onset date of the alleged disability. (Tr. at 17). At step two, the ALJ determined that Plaintiff had the following severe impairments: osteoarthritis in bilateral knees, bilateral hands, and feet; right knee joint effusion; bilateral calcaneal spurs; degenerative disc disease of the lumbar spine and of the cervical spine; diabetes mellitus with angina pectoris; and non-ischemic cardiomyopathy. (*Id*.). The ALJ also concluded that Plaintiff's alleged hypertension, hypercholesterolemia, gastritis, diverticulitis, fatty liver, iron deficiency anemia, colon polyps, hemorrhoids, food allergies, breast cysts, and osteopenia of the left hip were non-severe impairments. (*Id*. at 17-18). The ALJ further found that Plaintiff's alleged rheumatoid arthritis was a non-medically determinable impairment. (*Id*. at 18). In his step three analysis, the ALJ noted that there are no specific medical listings regarding diabetes mellitus. (*Id*.). The ALJ also evaluated the applicable sections of listings relating to the musculoskeletal system (listing 1.00) and the cardiovascular system (listing 4.00). (*Id.*). The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets, either individually or in combination, the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*).

Next, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), with the caveat that during an eight-hour workday Plaintiff is limited to standing for up to two hours, walking for up to two hours, and sitting for up to six hours. (*Id*. at 19). Furthermore, Plaintiff can only occasionally lift, carry, push, and/or pull

objects weighing ten pounds. (*Id.*). Additionally, Plaintiff can never climb ladders, ropes, or scaffolds, but can occasionally climb stairs and ramps. (*Id.*). The ALJ also found that Plaintiff can never kneel, crouch, or crawl, but can occasionally stoop and balance. (*Id.)*. The ALJ further noted that Plaintiff cannot work at unprotected heights or around moving mechanical parts. (*Id.*). Lastly, Plaintiff can have occasional exposure to humidity, wetness, or extreme cold. (*Id.*). To reach these conclusions, the ALJ evaluated the evidence of record, including medical opinions from state agency consultants and Plaintiff's treating physicians. (*Id.* at 19-24). Based on this information, the ALJ concluded that the "residual functional capacity assessment is supported by the treatment history, the diagnostic and physical examination findings, the opinions and observations of the treating and examining physicians, as well as the claimant's own testimony regarding her daily functioning." (*Id.* at 24).

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (*Id.*). At step five, however, the ALJ established that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, RFC, and transferable work skills. (*Id.* at 25). Based on testimony from a vocational expert, the ALJ determined that Plaintiff would be able to perform occupations such as data examination clerk, sorter, and appointment clerk. (*Id.*). Therefore, the ALJ concluded that Plaintiff is not disabled as defined in the SSA. (*Id.*).

**B. Analysis**

Plaintiff argues that the ALJ erred by failing to make sufficient findings about the requirements and nature of Plaintiff's past relevant work. (Pl. Br. at 8-11). Plaintiff further contends that the ALJ did not sufficiently establish that Plaintiff's past relevant work confers transferrable skills. (*Id*. at 11-15). The Court finds these contentions unavailing.

SSR 82-41 requires that "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision." *Saafeld v. Colvin*, No. 14-1108, 2016 WL 4871161, at *3 (E.D. Pa. Sept. 15, 2016) (quoting SSR 82-41, 1975-1982 Soc. Sec. Rep. Serv. 847, 1982 WL 31389) (internal quotation marks omitted). The ALJ's decision satisfied this requirement. The ALJ identified that Plaintiff had acquired the skill of record keeping from her past relevant work. (Tr. at 24). The ALJ then noted that the skill of record keeping is transferable to the occupations of data examination clerk, sorter, and appointment clerk. (*Id.* at 25).

The ALJ's decision must also contain "[e]vidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy." *Parks v. Astrue*, No. 10-01955, 2011 WL 6122003, at *6 (E.D. Cal. Dec. 14, 2011) (quoting SSR 82-41). Significantly, SSR 82-41 notes that "[t]his evidence may be [vocational specialist's] statements based on expert personal knowledge." *Skalka v. Comm'r of Soc. Sec.*, No. 16-3228, 2019 WL 1493218, at *9 (E.D.N.Y. Mar. 31, 2019) (quoting SSR 82-41) (internal quotation marks omitted). Here, the ALJ's decision is based on the vocational expert's testimony that in the national economy there are 51,000 data examination clerk positions, 51,000 sorter positions, and 124,000 appointment clerk positions. (Tr. at 25). The ALJ's decision thus contains evidence that the specific jobs to which Plaintiff's skills are transferrable exist in significant numbers in the national economy.

Plaintiff contends that "simply defining a skill as 'record keeping' is too vague" and that "generic record keeping . . . cannot be a skill." (Pl. Br. at 11). SSR 82-41 defines a skill as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through the performance of an occupation which is above the unskilled level (requires more than 30 days to learn)." *Oldenburgh*

7

*v. Astrue*, No. 08-1671, 2009 WL 812010, at *4 (M.D. Pa. Mar. 26, 2009) (quoting SSR 82-41). Other district courts have found record keeping a skill under SSR 82-41. *See Hulbert v. Comm'r of Soc. Sec.*, No. 06-1099, 2009 WL 2823739, at *21 (N.D.N.Y. Aug. 6, 2009) (citing *Inge v. Heckler*, 763 F.2d 169, 170 (4th Cir. 1985)) (additional citations omitted). Record keeping is "acquired through the performance of an occupation that is above the unskilled level" and "rise[s] above the level of carrying out simple job duties." *Chapa v. Astrue*, No. 12-009, 2012 WL 4797117, at *17 (S.D. Tex. Oct. 8, 2012). Record keeping "require[s] judgment, discretion, and responsibility." *Id*. Thus, the Court finds that record keeping is properly characterized as a transferable skill under SSR 82-41.

Furthermore, substantial evidence supports the ALJ's finding that Plaintiff acquired the skill of record keeping through her past relevant work. The ALJ based this finding on the vocational expert's testimony. (Tr. at 24). Social Security regulations explicitly allow an ALJ to rely on the testimony of a vocational expert in determining whether a plaintiff has acquired transferable skills from past relevant work. 20 C.F.R. § 404.1566(e) ("If the issue in determining whether [a claimant] is disabled is whether [a claimant's] work skills can be used in other work and the specific occupations in which they can be used . . . [an ALJ] may use the services of a vocational expert."). *See also Howard v. Colvin*, No. 14-349, 2015 WL 3794773, at *8 (D. Del. April 28, 2015) ("[A]n ALJ is encouraged to use the expertise of [a] VE in deciding a claimant's occupational capabilities."); *Salmons v. Astrue*, No. 10-811, 2015 WL 926049, at *8 n.2 (D. Del. March 2, 2015) ("The court finds substantial support for the ALJ's decision to consult a VE in both the Agency regulations and Third Circuit case law.") (citing 20 C.F.R. § 404.1566(e), 416.966(e); SSR 83-12, 1983 WL 31253; *Boone v. Barnhart*, 353 F.3d 203, 210 (3d Cir. 2004)).

The ALJ thus properly relied on the vocational expert's testimony in determining that Plaintiff had acquired the transferable skill of record keeping.

Moreover, Plaintiff's own testimony supports the ALJ's finding that she had acquired the skill of record keeping. Plaintiff testified that she received a diploma in computer operations in 1990, after which she worked as a computer operator and data entry specialist. (Tr. at 38-39). Plaintiff stated at her hearing that her responsibilities included ordering parts and processing claims. (*Id*. at 39). In her disability report form, Plaintiff listed additional duties including backing up data systems, inputting parts data, and filing warranty matters. (*Id.* at 217). The ALJ's finding that Plaintiff had acquired the transferrable skill of record keeping is thus supported by the testimony of both the vocational expert and Plaintiff herself.

Plaintiff also contends that since her previous job "involved working with information about auto parts and auto warranties," the ALJ was required to find that her skills were only transferable to jobs dealing with information about automobiles. (Pl. Br. at 12-14). Plaintiff further asserts that the ALJ erred by not evaluating whether Plaintiff would "be using the same types of computers and software at the same levels of required proficiency at these jobs." (Pl. Br. at 14).

The Court disagrees. "Transferability is most probable and meaningful" among jobs that require the same or lesser degree of skill, the same tools or machines, and the same products, processes, or services. C.F.R. § 416.968(d)(2). Here, the ALJ and vocational expert identified jobs requiring a lesser skill level than that required for her past relevant work. Tr. at 25. Furthermore, record keeping is a clerical skill involving the same types of processes and services, even among different industries. "[W]here job skills have universal applicability across industry lines, *e.g.*, clerical, professional, administrative, or managerial types of jobs, transferability of

skills to industries differing from past work experience can usually be accomplished with little, if any, vocational adjustment." *Gaddis v. Comm'r of Soc. Sec.*, 417 Fed. Appx. 106, 107 (3d Cir. 2011) (quoting SSR 82-41) (alteration in original).[2] Therefore, transferability was proper here as between Plaintiff's past relevant work as a stock control clerk requiring a skill level of five and the three jobs identified by the vocational expert, each of which requires a skill level of three or four. Tr. at 24-25.

Finally, Plaintiff asserts that the ALJ did not give proper weight to her testimony about her limitations in the use of her hands due to arthritis. (Pl. Br. at 14). The ALJ found that Plaintiff's osteoarthritis was a severe impairment, but that Plaintiff was able to frequently handle and/or feel objects. (Tr. at 19). Plaintiff now contends that she is "further limited than what the ALJ found." (Pl. Br. at 14). Plaintiff bases this assertion on her testimony that her hands sometimes become stiff with use, swell, and/or lock up. (*Id.*). Plaintiff also testified at her hearing that she was no longer able to type due to her hands stiffening. (Tr. at 42).

"ALJ's credibility determinations are entitled to great deference and may not be discarded lightly." *Jones v. Colvin*, No. 13-4831, 2014 WL 2862245, at *9 f(E.D. Pa. June 24, 2014) (citing *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)). An ALJ "may reject, in part or in whole, subjective complaints if she finds them not credible based on other evidence in the record." *Id.*

---

[2] Moreover, while the regulations require an ALJ to find transferable work that is essentially identical to the plaintiff's past relevant work if she is 55 or older and limited to sedentary work, no such stringent requirement is applicable for younger individuals like Plaintiff, who was 49 at the time of filing her application for disability benefits (Tr. at 69). *See Hoekstra v. Berryhill*, No. 17-863, 2018 WL 4354554, at *2 (W.D. Pa. Sept. 12, 2018) (quoting 20 C.F.R. § 416.968(d)(4)) (finding that once a claimant reaches advanced age, an ALJ may only find that she has skills transferable to sedentary jobs that exist in significant numbers in the national economy if these jobs are "so similar to [a claimant's] previous work that [they] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."). Thus, the ALJ here was not required to find that the roles of data examination clerk, sorter, and appointment clerk were nearly identical to Plaintiff's past work as a stock control clerk.

10

(citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999) (citing *Baerga v. Richardson*, 500 F.3d 309, 312 (3d Cir. 1975)); *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993)). Here, the ALJ considered Plaintiff's testimony and found that "the objective medical evidence, as well as the opinions and observations of [Plaintiff's] treating and examining physicians do not entirely support [Plaintiff's] testimony regarding her functional limitations to the degree and extent alleged." (Tr. at 20).

The Court finds that substantial evidence supports the ALJ's credibility determination. The ALJ noted in his decision that x-ray studies done in June 2015 showed only "minimal" osteoarthritis in Plaintiff's hands. (Tr. at 21) (citing Tr. at 724) (radiology report by Dr. David Thlerman dated June 15, 2015 finding "minimal osteoarthritis" based on imaging of Plaintiff's hands). The ALJ also pointed to a medical examination finding that Plaintiff was able to "perform all gross and fine manipulation without limitations." (Tr. at 24) (citing Tr. at 508) (medical report of Dr. Alan Friedman dated April 20, 2015 stating that "fine and gross motor coordination are normal" and that Plaintiff can "pick up a pin from the table with either hand.")

Furthermore, multiple other exhibits in the record support the ALJ's finding that Plaintiff was able to frequently handle and/or feel objects. *See, e.g.*, (Tr. at 338) (medical report of Dr. Lawrence I. Livingston dated March 7, 2014 finding, based on examination of Plaintiff on December 27, 2013, that she retained "normal strength of her . . . elbow[s], wrist[s], [and] hand flexors/extensors."); (Tr. at 340) (medical report of Dr. Salvatore J. Milazzo dated March 7, 2014 finding Plaintiff "exhibited functional motion of her … elbows[,] wrists[,] and hands" and that "strength is intact" in these areas); (Tr. at 342) (medical report of Dr. Salvatore J. Milazzo dated March 19, 2014); Tr. at 344 (medical report of Dr. Salvatore J. Milazzo dated April 11, 2014); Tr. at 349 (medical report of Dr. Lawrence I. Livingston dated August 18, 2014).

Accordingly, the Court finds that the ALJ's step five findings are supported by substantial evidence.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the ALJ's decision is hereby affirmed. An appropriate order accompanies this Opinion.

DATED: March 25, 2020

Claire C. Cecchi, U.S.D.J.